UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Karen Warrington, individually,</u>
<u>and as m/n/f of J.W.</u>

v.

Civil No. 20-cv-1014-LM
Opinion No. 2021 DNH 070 P

<u>John Edward Warrington</u>

## O R D E R

Karen Warrington brings this diversity action on her own behalf and as mother and next friend of her minor son, J.W., against John Edward Warrington— her ex-husband and J.W.'s father.  Plaintiff alleges that defendant recorded a telephone conversation between himself and J.W. without J.W.'s knowledge or consent in violation of New Hampshire's Wiretapping and Eavesdropping Act.  <u>See</u> RSA 570-A:2, :11.  <u>See</u> <u>generally</u> RSA ch. 570-A.  Defendant moves to dismiss.  <u>See</u> doc. no. 7.  For the reasons outlined below, the court grants the motion but dismisses the complaint without prejudice.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." <u>Foley v. Wells Fargo Bank, N.A.,</u> 772 F.3d 63, 71, 75 (1st Cir. 2014) (citation and internal quotation marks

omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

At the time plaintiff filed this action, she resided in Minnesota and defendant resided in Tennessee.  At all times relevant to this action, defendant resided in either Tennessee or Minnesota.  J.W. attends boarding school in New Hampshire.

Plaintiff and defendant divorced in July 2017.  A Minnesota court issued their divorce decree.  The divorce decree requires defendant to contribute financially to J.W.'s participation in extracurricular activities, so long as plaintiff and defendant agree to J.W.'s participation in a given activity.  Shortly after entry of the divorce decree, however, defendant refused to agree to J.W.'s participation in any extracurricular activities, even those that J.W. had previously participated in.  As a result, plaintiff filed a motion to modify the divorce decree to require defendant to contribute to J.W.'s extracurriculars.

In October 2017, defendant called J.W. on his dorm room phone.[1]  Defendant raised topics of conversation during this phone call that caused J.W. to become noticeably angry toward defendant.  After J.W. became angry, defendant began

---

[1] Plaintiff makes no allegation in her complaint as to where defendant was physically located (i.e., in Tennessee or somewhere else) when he called J.W.

recording their conversation.  He did not notify J.W. or obtain his permission before doing so.

Following the October 2017 phone call, defendant refused to exercise any in-person parenting time with J.W. or make contributions toward J.W.'s tuition and extracurricular expenses.  In addition, defendant submitted portions of the recorded phone call at a post-decree motion hearing in the parties' divorce proceeding.  Defendant used the contents of the recording—i.e., J.W.'s anger toward his father—to explain to the court why he had not been exercising parenting time or contributing to J.W.'s tuition and extracurriculars.  In October 2018, the Minnesota court entered an order declining to require defendant to contribute to J.W.'s extracurricular activities.

Plaintiff thereafter filed this single-count complaint.  Plaintiff alleges that defendant violated New Hampshire's Wiretapping and Eavesdropping Act by recording portions of his October 2017 phone call with J.W. without the latter's consent, and by subsequently submitting the recording as evidence in the parties' divorce proceeding.  See RSA 570-A:11.  Plaintiff seeks damages—actual, statutory, and punitive—as well as attorney's fees.  See id.

Defendant now moves to dismiss, arguing, inter alia, that plaintiff fails to allege that he intercepted a communication within New Hampshire as required by the Wiretapping and Eavesdropping Act.

## DISCUSSION

The Wiretapping and Eavesdropping Act provides a private right of action for "[a]ny person whose telecommunication . . . is intercepted, disclosed, or used in violation of this chapter."  RSA 570-A:11.  Under the Act, it is unlawful to "wilfully intercept[ ] . . . any telecommunication" "without the consent of all parties to the communication."  RSA 570-A:2, I(a).  "Intercept" is defined, in pertinent part, as "the recording of . . . the contents of any telecommunication . . . through the use of any electronic, mechanical, or other device."  RSA 570-A:1, III.

In State v. Ruggiero, 163 N.H. 129 (2011), the New Hampshire Supreme Court considered whether a recording which took place in South Carolina violated the Act.  In that case, the defendant, Kristin Ruggiero, obtained a restraining order against her soon-to-be-ex-husband, Jeffrey Ruggiero, shortly before the commencement of their divorce proceedings.  See Ruggiero, 163 N.H. at 131.  Ms. Ruggiero relocated to California at or around the time she obtained the restraining order, and Mr. Ruggiero relocated to South Carolina around that same time.  See id. After obtaining the restraining order, Ms. Ruggiero began contacting Mr. Ruggiero on the telephone.  See id.  Mr. Ruggiero's partner, Jean Backus, used a video camera to record Ms. Ruggiero's voice during these calls.  See id.  Ms. Ruggiero was later charged with numerous counts of falsifying physical evidence and one count of making a false report in relation to her attempts to jail Mr. Ruggiero for violating the restraining order.  See id. at 130-32; see also RSA 641:4, :6.  The State obtained Ms. Backus's recordings of Ms. Ruggiero's phone calls.  See Ruggiero, 163 N.H. at

132.  Prior to trial, Ms. Ruggiero filed a motion in limine to exclude the recordings pursuant to RSA 570-A:6.  See id. at 132-33.  RSA 570-A:6 provides in relevant part that, "[w]henever any telecommunication . . . has been intercepted, no part of the contents of such communication . . . may be received in evidence in any trial . . . if the disclosure of that information would be in violation of this chapter."  The superior court denied that motion.  Ruggiero, 163 N.H. at 132-33.

On appeal, the New Hampshire Supreme Court upheld the trial court's denial of Ms. Ruggiero's motion.  The court explained that RSA 570-A:6 mandates the exclusion of evidence only if "disclosure [of that evidence] would violate New Hampshire's wiretap statute."  Id. at 134.  The court noted that the Act prohibits the willful disclosure of the contents of a telecommunication if the person making the disclosure knows or has reason to know "that the information was obtained through the interception of a telecommunication . . . in violation of [paragraph I of RSA 570-A:2]."  Id. (emphasis omitted) (quoting RSA 570-A:2, I(c)-(d)).  Thus, the court's analysis turned on whether the interception of Ms. Ruggiero's telecommunication was in violation of RSA 570-A:2, I.  See id.

The court held that the interceptions did not violate RSA 570-A:2, I.  Id.  The court observed that "[n]one of the interceptions occurred in New Hampshire."  Id.  Rather, "the calls were . . . intercepted in South Carolina" where Ms. Backus recorded them.  Id.  Citing the "general rule" that "restrictions in one state's consent surveillance statute will not be given extraterritorial effect," the court concluded that Ms. Backus did not violate New Hampshire's Wiretapping and Eavesdropping

Act by recording Ms. Ruggiero's phone call in South Carolina.  Id. (citing 2 James G. Carr & Patricia L. Bellia, The Law of Electronic Surveillance § 7:48, at 268 (2011)).

Ruggiero makes clear that an interception may violate RSA 570-A:2 only if it occurs in New Hampshire, and that an interception occurs in the place where the party intercepting the communication is located.  See id. at 134-35.  The Ruggiero court's holding accords with the weight of authority interpreting other states' similar electronic surveillance statutes.  See, e.g., State v. Fowler, 139 P.3d 342, 347 (Wash. 2006) (en banc) ("[T]he test for whether a recording of a conversation or communication is lawful is determined under the laws of the place of recording."); MacNeill Eng'g Co., Inc. v. Trisport Ltd., 59 F. Supp. 2d 199, 202 (D. Mass. 1999) (concluding that "secretly recording a conversation outside Massachusetts does not give rise to liability under" Massachusetts' electronic surveillance statute "even if the call originated within Massachusetts"); State v. Fleming, 755 P.2d 725, 726-27 (Or. Ct. App. 1988) (concluding that, where phone call between Oregon and Washington speakers was recorded by the Oregon speaker, Oregon law determined whether recording was lawful); Pendell v. AMS/Oil, Inc., Civ. A. No. 84-4108-N, 1986 WL 5286, at *2-5 (D. Mass. Apr. 30, 1986) (concluding that secretly recording a telephone conversation from outside of Massachusetts does not give rise to liability under Massachusetts' statute even if the call was placed to a party within Massachusetts); see also 2 James G. Carr et al., The Law of Electronic Surveillance § 7:47 & ns. 1-3, at 216 (2020).

Here, plaintiff has failed to plausibly allege that defendant intercepted J.W.'s telecommunication in New Hampshire.  Although the complaint alleges that defendant called J.W., a New Hampshire boarding school student, on J.W.'s dorm room phone, it makes no allegation as to defendant's physical location when he called J.W. and recorded their conversation.  And, while the court is obligated to construe reasonable inferences in the plaintiff's favor, see Foley, 772 F.3d at 75, the court cannot reasonably infer from the complaint's factual allegations that defendant was in New Hampshire when he intercepted his phone call with J.W.  The only allegations in the complaint as to defendant's physical location are that he currently has a residential address in Tennessee and that he was a "resident" of Tennessee or Minnesota "[a]t all relevant times to this suit."  Doc. no. 1 ¶ 2.

Plaintiff's reliance upon RSA 625:4 is unavailing.  A subparagraph of that statute provides that a person may be convicted under New Hampshire's criminal laws if his "conduct which is an element of the offense or the result which is such an element occurs within" New Hampshire.  RSA 625:4, I(a).  Even assuming that the New Hampshire Supreme Court would apply this statute to civil proceedings under RSA chapter 570-A, this subparagraph does not demonstrate that the Act applies to out-of-state interceptions because such interceptions do not "occur[ ] within" New Hampshire.  Id.

Another subparagraph of RSA 625:4 states that subparagraph I(a) "does not apply" when "[c]ausing a particular result is an element of an offense and the result is caused by conduct occurring outside the state which would not constitute an

7

offense if the result had occurred there."  RSA 625:4, II(b).  Subparagraph II(b) is

intended to prevent a person's out-of-state conduct from giving rise to a prosecution

alleging a violation of New Hampshire law "when the conduct is legal [under] the

law . . . where it takes place."  State v. Luv Pharmacy, Inc., 118 N.H. 398, 406

(1978) (quotation omitted); see also Carr et al., supra p.7 ("State restrictions on

consent surveillance by private parties . . . will not be given extra-territorial effect.

Thus, whether a resident of a prohibitory state places or receives the call, it may be

recorded lawfully by the other speaker if that speaker's state permits such

recording." (footnotes omitted)) (prior edition cited with approval in Ruggiero, 163

N.H. at 134-35).

Although the court cannot discern from the face of the complaint the state in

which defendant was physically present when he intercepted J.W.'s

telecommunication, plaintiff argues that defendant's interception contravened

Tennessee's wiretapping law.  Even assuming Tennessee law is relevant, however,

the court concludes that defendant's interception was permissible under Tennessee

law.  Unlike New Hampshire, which generally requires all parties to a

communication to consent to the communication's recording, Tennessee is a one-

party consent state.  See Tenn. Code Ann. § 39-13-601(b)(5) (providing that it is

lawful under Tennessee's wiretapping act for a private party to intercept a wire,

oral, or electronic communication "where the person is a party to the

communication"); Tenn. Code Ann. § 39-13-604(b)(1) ("A person commits an offense

who, without the consent of at least one (1) party to a communication, intentionally

records or disseminates a communication transmitted between . . . a cellular radio telephone and a landline telephone . . . ." (emphasis added)); Ledford v. Sneed, No. E2018-00904-COA-R3-CV, 2020 WL 2299770, at *3 (Tenn. Ct. App. May 8, 2020) ("Tennessee law provides that it is lawful for a person to intercept an oral communication if . . . the person intercepting the communication is a party to the communication . . . ." (citing Tenn. Code Ann. § 39-13-601(b)(5))).  Thus, as a party to the October 2017 phone call, Tennessee law permitted defendant to intercept that call without first obtaining J.W.'s consent.

Although plaintiff points out that Tennessee law does not permit a party to a communication to intercept that communication "for the purpose of committing any criminal or tortious act in violation of the constitution or laws of" Tennessee, § 39-13-601(b)(5), the court cannot infer from the complaint's factual allegations that defendant intercepted his call with J.W. for the purpose of committing a criminal or tortious act in violation of Tennessee law.  Rather, the thrust of the complaint is that defendant's purpose in recording his phone call with J.W. was to use the recording to limit his financial obligations under the Minnesota court's divorce decree.  Plaintiff cites scant authority in asserting that this intended use contravenes Tennessee law, and her assertion is rebutted by the fact that Tennessee law permits telecommunications intercepted by a party to the communication to be used as evidence in Tennessee judicial proceedings.  See Tenn. Code Ann. § 40-6-307; Tenn. Code Ann. § 39-13-601(a)(1)(C), (b)(5).

In sum, because plaintiff does not allege that defendant's interception occurred in New Hampshire and there is no indication that defendant's conduct was unlawful under another relevant state's law, plaintiff has failed to state a claim under the New Hampshire Wiretapping and Eavesdropping Act.[2]  The court therefore dismisses plaintiff's complaint without prejudice to her filing an amended complaint within thirty days alleging facts sufficient to state a claim under that Act.[3]  If no amended complaint is filed within thirty days, this court will direct the clerk to enter judgment and close the case.

## CONCLUSION

Defendant's motion to dismiss (doc. no. 7) is granted.  The complaint is dismissed without prejudice to plaintiff filing an amended complaint within thirty days asserting a plausible wiretapping claim.  If plaintiff does not file an amended

---

[2] Because the court concludes that plaintiff fails to state a claim, it need not consider defendant's alternative arguments for dismissal.

[3] In light of plaintiff's argument that the recording was impermissible under Tennessee law, which suggests that plaintiff believes defendant was in Tennessee when he intercepted his call with J.W., the court suspects that plaintiff may be unable to file an amended complaint plausibly alleging that plaintiff intercepted a communication in New Hampshire as required by the Wiretapping and Eavesdropping Act.  See doc. no. 7 at 5; doc. no. 9 at 4-9.  However, because it is not a "certainty" from the face of the complaint that plaintiff could not state a claim under the Act in an amended pleading, the court affords her an opportunity to attempt do so—if she believes she can.  5B Arthur R. Miller et al., Fed. Prac. & Proc. Civ. § 1357 (3d ed.).

complaint within thirty days, the court will direct the clerk to enter judgment and close the case.

     SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 6, 2021

cc:  Counsel of Record